**IT IS ORDERED as set forth below:**

**Date: September 27, 2023**



_____
**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

IN RE:

Donald Paul Henderson,

      Debtor.

CASE NO. 23-50381-BEM

CHAPTER 7

# O R D E R

This matter came before the Court on July 19, 2023, for hearing on the United States Trustee's *Motion to Dismiss Based on Presumption of Abuse Arising Under 11 U.S.C. §707(b)(2)* ("Motion to Dismiss"). [Doc. 17]. Lindsay P.S. Kolba appeared on behalf of the United States Trustee ("U.S. Trustee") and Brian R. Cahn appeared on behalf of Debtor.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.[1]

---

[1] To the extent, if any, that the Findings of Fact as stated may be deemed Conclusions of Law, they shall be considered Conclusions of Law. Similarly, to the extent the matters expressed as Conclusions of Law may be deemed Findings of Fact, they shall be considered Findings of Fact.

**I. Findings of Fact**

Prior to the hearing, the parties submitted a *Joint Statement of Issues to Be Decided and Stipulation of Facts*. [Doc. 28]. Thus, the facts have been stipulated to as follows:

On January 13, 2023, Donald Paul Henderson, Debtor, filed a chapter 7 bankruptcy petition. Michael Bargar was appointed as the chapter 7 trustee in the case. Debtor is an individual and his debts are primarily consumer. The Section 341 meeting of creditors occurred on February 8, 2023.

On January 13, 2023, Debtor filed Official Form 122A-1, Chapter 7 Statement of Your Current Monthly Income, and Official Form 122A-2, Chapter 7 Means Test Calculation (the "Means Test"), which was amended that same day when Debtor filed an amended Official Form 122A-2, Chapter 7 Means Test Calculation (the "First Amended Means Test"). [Doc. 5]. The First Amended Means Test indicates Debtor's income is above the median family income for a household of five, his monthly disposable income under § 707(b)(2) is negative $1,395.24, and the presumption of abuse does not arise. The First Amended Means Test includes a marital adjustment of $4,421.00 and a housing allowance adjustment on line 10 of $671.00 explaining that Debtor's actual market-rate rent expense is $2,400.00 per month. Debtor's First Amended Means Test also claims a special circumstances adjustment because he alleges his wife needs to finance a reliable car, which results in an additional monthly expense of $400.00. On February 27, 2023, Debtor filed an amended Official Form 122A-2, Chapter 7 Means Test Calculation (the "Second Amended Means Test") [Doc. 15] to correct a $100.00 math error, resulting in monthly disposable income under § 707(b)(2) of negative $1,295.24, instead of negative $1,395.24. The Second Amended Means Test, like the First Amended Means Test, includes the marital adjustment of $4,421.00, the adjustment on line 10 of $671.00, and asserts the special circumstances adjustment in the amount

2

of $400.00. Debtor is not currently paying any amounts on a monthly basis as a result of his alleged special circumstance of needing to replace his wife's vehicle.

Debtor is currently employed as a warehouse manager at Pulsed Power Technologies, LLC ("PPT"). He has been employed at PPT for more than four years. His Current Monthly Income from wages is $5,601.28. In addition to wages, Debtor earns about $409.17 per month selling items on eBay.[2] Debtor is married to Lynn Henderson ("Non-filing Spouse" and with Debtor, the "Hendersons"). Non-filing Spouse is currently employed in customer service by Cellco Partnership ("Cellco") where she has worked for over 21 years. Non-filing Spouse's average gross monthly income for the period of July 1, 2022 to December 31, 2022, was $7,002.64. The Henderson's total average gross monthly income during July 1, 2022 to December 31, 2022, was $13,013.08. Non-filing Spouse does not have any sources of income other than her employment at Cellco.

During the six-month look-back period covered by the Means Test, Non-filing Spouse had $2,142.13 per month withheld from her paycheck for taxes and other payroll deductions. On April 29, 2021, Non-filing Spouse individually borrowed $31,911.50 from BestEgg at 17.09% interest with a five-year term (the "First BestEgg Loan"). Based upon documents produced, Non-filing Spouse's monthly minimum payment on the First BestEgg Loan is $794.63. Non-filing Spouse has not provided documentation to the U.S. Trustee to demonstrate the purpose of the First BestEgg Loan or how she used the proceeds of the First BestEgg Loan. On January 13, 2022, Non-filing Spouse individually borrowed $20,500.00 from BestEgg at

---

[2] The Code defines "current monthly income", in relevant part, as "the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on — (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii)." 11 U.S.C. § 101(10A)(A)(i). Thus, Debtor's current monthly income is $5,601.28 plus $409.17 or $6,010.45.

3

20.51% interest with a five-year term (the "Second BestEgg Loan" and with the First BestEgg Loan, the "BestEgg Loans"). Based upon documents produced, Non-filing Spouse's monthly minimum payment on the Second BestEgg Loan is $548.96. Non-filing Spouse has not provided documentation to the U.S. Trustee to demonstrate the purpose of the Second BestEgg Loan or how she used the proceeds of the Second BestEgg Loan. Non-filing Spouse has thirteen credit cards in her individual name with balances for which she makes monthly payments (the "Credit Card Accounts"). Based upon documents produced, the total of the monthly minimum payments for Non-filing Spouse's Credit Card Accounts is $1,656.24. Non-filing Spouse has not provided documentation to the U.S. Trustee to demonstrate the Credit Card Accounts were not used to pay for the household expenses of Debtor or Debtor's dependents. Non-filing Spouse has not provided information or documentation to the U.S. Trustee about whether she continues to incur charges on any of the Credit Card Accounts. According to the bankruptcy schedules, Non-filing Spouse actually pays a total of $2,643.00 monthly to service the BestEgg Loans and the Credit Card Accounts. According to the bankruptcy schedules, Non-filing Spouse contributes $3,049.00 per month (the remainder of her $5,692.00 net income after payment of BestEgg Loans and the Credit Card Accounts), toward the household expenses, which are projected in Schedule J to total $7,351.00 monthly ($9,994.00 total, less the $2,643.00 paid by Non-filing Spouse to the BestEgg Loans and Credit Card Accounts).

The Henderson family (Debtor, Non-filing Spouse, and their three children) live in a leased residence at 909 Idlewood Dr., Canton, GA, 30115 (the "Idlewood Property"). The Idlewood Property is a four-bedroom, three-bathroom single-family house with approximately 2,508 residential square feet, exclusive of an unfinished basement. The Idlewood Property is located in Cherokee County. The applicable IRS housing allowance for mortgage or rent expenses

4

for a household size of five or more people in Cherokee County, Georgia, is $1,729.00, but the Henderson's actual cost to lease the Idlewood Property is $2,400.00 per month.

The U.S. Trustee filed the Motion to Dismiss Debtor's chapter 7 bankruptcy case pursuant to Bankruptcy Code § 707(b)(2) on March 23, 2023. [Doc. 17]. On April 18, 2023, Debtor filed a response to the Motion to Dismiss, arguing (i) Debtor is entitled to claim a marital adjustment on the Means Test in excess of the amount calculated by the U.S. Trustee; and (ii) Debtor is entitled to a housing adjustment, either on line 10 of the Means Test, or in the alternative, as an allowance for special circumstances on line 43 of the Means Test.

## II. Conclusions of Law:

In the Joint Statement of Issues to Be Decided the parties ask the Court to resolve two issues: (1) whether Debtor can claim a marital adjustment for credit card and loan payments on debts incurred and owed exclusively by Non-filing Spouse, paid by her from her separate income, without requiring evidence detailing what her credit cards and loan proceeds were used for? And, (2) whether Debtor can claim a housing adjustment, either on line 10 of the Means Test or on line 43 under special circumstances, for the difference between the IRS Standard, Housing and utilities – Mortgage or rent expense, and Respondent's actual monthly rent payment? Debtor argued at the hearing that he could not provide additional documentation to the U.S. Trustee related to the marital adjustment without causing issues with his Non-filing Spouse. In addition, at the hearing, Debtor asserted that if the Court does not find Debtor's current Means Test deductions to be appropriate, Debtor seeks to include Non-filing Spouse's tax-withholdings and car payment as special circumstance deductions.

    **A. Legal Standards**

5

In cases filed under Chapter 7 of the Bankruptcy Code, "the Means Test serves as a 'screening mechanism to determine whether a Chapter 7 proceeding is appropriate.'" *In re Rivers*, 466 B.R. 558, 560 (Bankr. M.D. Fla. 2012) (quoting *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 65 n.1, 131 S. Ct. 716, 722 n.1 (2011)). The Means Test was added to the Code when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to address perceived abuses of the bankruptcy system. *In re Norwood-Hill*, 403 B.R. 905, 907-08 (Bankr. M.D. Fla. 2009). One such change is reflected in 11 U.S.C. § 707(b), which states that the court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Section 707(b)(2) creates a presumption of abuse "if the debtor runs afoul of the so-called '[M]eans [T]est.'" *In re Witcher*, 702 F.3d 619, 621 (11th Cir. 2012). "If a presumption of abuse arises under the [M]eans [T]est and is not rebutted, the court may dismiss or convert the chapter 7 case." *Id*. (citing 11 U.S.C. §§ 707(b)(1), 707(b)(2)). This presumption can be rebutted by a demonstration of "special circumstances" such as a serious medical condition or active-duty military service, which justify "additional expenses or adjustments to current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). Debtor has the burden of establishing special circumstances through documentation and explanation of the special circumstances. *Id.* § 707(b)(2)(B)(ii)-(iii).

Determining if special circumstances exist is a "'fact-specific, case-by-case inquiry into whether the debtor has a "meaningful ability" to pay his or her debts in light of an additional expense or adjustment to income not otherwise reflected in the means test calculation.'" *In re Knight*, 370 B.R. 429, 437-38 (Bankr. N.D. Ga. 2007) (Bonapfel, J.) (chapter 13 case) (quoting *In re Delbecq*, 368 B.R. 754, 756-59 (Bankr. S.D. Ind. 2007)). To show special circumstances, "the

6

debtor must provide an itemized accounting of each additional expense or adjustment to income and provide (1) documentation of said expenses and/or adjustments to income, and (2) a detailed explanation of the special circumstances that make the added expenses and/or adjustments to income necessary and reasonable." *In re Walker*, No. 19-57404-PMB, 2019 WL 5866154, at *2 (Bankr. N.D. Ga. Nov. 8, 2019) (Baisier, J.) (citing 11 U.S.C. § 707(b)(2)(B)(ii)(I)-(II)). "Generally, a special circumstance satisfying these requirements will arise out of extraordinary or exceptional circumstances, or situations otherwise beyond the debtor's control." *Id.* (citing *In re Brown*, 500 B.R. 255, 262 (Bankr. S.D. Ga. 2013) (chapter 13 case)).

Courts in the Eleventh Circuit have determined that special circumstances are not limited solely to serious medical conditions and active-duty military status as noted in the Code, rather circumstances similar in nature to those examples are sufficient to rebut the presumption of abuse. *In re Chambers*, No. 3:21-BK-1301-JAF, 2022 WL 828301, at *3 (Bankr. M.D. Fla. Mar. 18, 2022) (citing *In re Turner*, 376 B.R. 370, 378 (Bankr. D.N.H. 2007); *In re Tauter*, 402 B.R. 903, 906 (Bankr. M.D. Fla. 2009)). "The similarity in nature of the two examples [in the Code] is that they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses." *Chambers,* 2022 WL 828301 at *3 (quoting *In re Smith*, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008)). Further, a special circumstance has been defined within this Bankruptcy Court as "one that, if the debtor is not permitted to adjust her income or expenses accordingly, results in a demonstrable economic unfairness prejudicial to the debtor." *Knight*, 370 B.R. at 437-38. *See also Chambers,* 2022 WL 828301, at *4 (the amount of rent paid which exceeds the IRS standard and monthly pet expenses qualify as special circumstances); *Walker*, 2019 WL 5866154, at *3 (debtor's desire to eventually retire does not constitute a special circumstance); *In re Anderson*, 444 B.R. 505, 508 (Bankr. W.D.N.Y. 2011) (age by itself and the

7

"mere desire for retirement" is not a special circumstance); *In re Cribbs*, 387 B.R. 324, 327-330 (Bankr. S.D. Ga. 2008) (repayment of 401(k) loan was a special circumstance due to the reasons for taking the loan); *In re Stocker*, 399 B.R. 522, 524, 527-28 (Bankr. M.D. Fla. 2008) (Antenuptial Agreement between husband and wife, which they did not adhere to and which resulted in the expending of all of debtor's monthly income, is not a special circumstance)[3]; *In re Patterson*, 392 B.R. 497, 504 (Bankr. S.D. Fla. 2008) (expenses for a storage unit, unreimbursed expenses for food while debtor's husband is traveling for work, living expenses of debtor's adult daughter living away at college, and student loan payments, all do not qualify as special circumstances); *In re Hernandez*, No. 08-31588, 2008 WL 5441279, at *5 (Bankr. N.D. Ohio Dec. 1, 2008) (voluntary lifestyle changes of postpetition marriage and decrease in work hours are not special circumstances).

Before the Court need consider special circumstances, the U.S. Trustee as the moving party must carry the initial burden of demonstrating by a preponderance of the evidence that there is a presumption of abuse under § 707(b)(2) and that Debtor's Chapter 7 filing should be dismissed. *Sturm v. U.S. Tr.*, 455 B.R. 130, 139 (N.D. Ohio 2011) (citing *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D. Ohio 2007)). Thus, the questions posed to the Court seek a determination of whether Debtor "fails" the Means Test, meaning that his income less expenses as calculated in § 707(b)(2)(A)(i), exceeds the threshold set forth therein, thereby requiring the Court to presume abuse and authorizing the Court to dismiss or, with Debtor's consent, convert the case.

Pursuant to 707(b)(2)(A)(iii)(I) the Means Test calculation creates a "'snapshot' of the debtor's finances as of the petition date and does not factor into consideration a debtor's future intentions." *Norwood-Hill*, 403 B.R. at 909; *see also In re Lee*, 640 B.R. 943, 947-48 (Bankr. M.D.

---

[3] The court in *Stocker* found that the debtor had "a meaningful ability to repay her debts" and had "manipulated the means test in an attempt to obtain relief to which she is not entitled." 399 B.R. at 532.

Ga. 2022) (the "snapshot" interpretation is the appropriate approach under § 707(b)(2)); *In re Benedetti*, 372 B.R. 90, 96-97 (Bankr. S.D. Fla. 2007) ("a 'snapshot' view of the Debtor's expenses on the date of filing makes sense in the context of a Chapter 7 case"). A majority of bankruptcy courts follow the snapshot approach to the Means Test, including three judges in this District. *See In re Navin*, 526 B.R. 81, 86-87 (Bankr. N.D. Ga. 2015) (Murphy, J.); *In re McDaniel*, No. 06-62786-CRM, 2007 WL 7142479, at *2 (Bankr. N.D. Ga. Aug. 24, 2007) (Mullins, J.); *In re Walker*, No. 05-15010-WHD, 2006 WL 1314125 at *5-6 (Bankr. N.D. Ga. May 1, 2006) (Drake, J.). The Court agrees that this is the best approach in a chapter 7 case.

**1. Marital Adjustment**

The starting point for the Means Test is current monthly income, which "includes any amount paid by any entity other than the debtor … on a regular basis for the household expenses of the debtor or the debtor's dependents[.]" 11 U.S.C. § 101(10A)(B)(i). Therefore, the Means Test allows the debtor to deduct from income any amounts of a non-filing spouse's income that is not used for household expenses, which is known as the marital adjustment. Official Form 22 (2005-2008 Committee Notes).

Here, the initial issue addresses the amount of information the U.S. Trustee is entitled to receive when assessing the marital adjustment pursuant to line 3 of official form 122A-2. Line 3 instructs Debtor to "[a]djust your current monthly income by subtracting any part of your spouse's income not used to pay for the household expenses of you or your dependents." This adjustment is then deducted from Debtor's current monthly income. As it pertains to the marital adjustment, the U.S. Trustee "must initially demonstrate 'how much, if any, of a non-filing spouse's income should be imputed to a debtor when making the disposable income calculation.'" *In re Montalto*, 537 B.R. 147, 153 (Bankr. E.D.N.Y. 2015) (quoting *In re Roll*, 400 B.R. 674, 677

9

(Bankr. W.D. Wis. 2008)) (other citations omitted). "However, the debtor cannot 'arbitrarily pick a number out of the air for a marital adjustment ... without providing sufficient documentation, when it is requested by the objecting party, to show that the claimed amounts are properly deducted.'" *Id.* (quoting *In re Dugan*, No. 07–40899, 2008 WL 3558217, at *5 (Bankr. D. Kan. Aug. 12, 2008) (chapter 13 case)) (alteration in original). The burden is on the debtor to itemize and substantiate the basis for a marital adjustment. *In re Kulakowski*, No. 10-BK-07286-CED, 2011 WL 3878386, at *5-6 (Bankr. M.D. Fla. Sept. 2, 2011), *aff'd*, 735 F.3d 1296 (11th Cir. 2013).

Here, Debtor is seeking to claim a marital adjustment for credit card and loan payments incurred and owed exclusively by Non-filing Spouse. A marital adjustment is "limited to a non-filing spouse's expenses that are purely personal to the non-filing spouse." *In re Tapply*, 652 B.R. 124, 132 (Bankr. D. Mass. 2023); *In re Rable*, 445 B.R. 826, 829 (Bankr. N.D. Ohio 2011) (where debtor and his wife both lived in the same home, "the mere fact that the Debtor's spouse, but not the Debtor, is the only party having a legal obligation to pay the debts secured by the first and second mortgages on the marital residence does not afford a basis for the Debtor to make a marital adjustment").

The U.S. Trustee opposes the marital adjustment because Debtor has not shown whether the credit cards and loans were used to pay for household expenses or individual expenses of the Non-filing Spouse. The authorities cited by the U.S. Trustee and those located by the Court require a debtor to substantiate the nature of the underlying obligations with documentation in order to deduct the expenses as a marital adjustment. *See Montalto*, 537 B.R. at 149 ("it is ultimately the debtor's burden to prove which expenses are purely personal to the non-filing spouse" because "the facts necessary to prove whether certain expenses are household or non-household are almost entirely within the control of the debtor"). The Court agrees with these

authorities. To allow otherwise would open the door to improper manipulation of the Means Test by debtors.

The parties stipulated that neither Debtor nor Non-filing Spouse, have provided documents to the U.S. Trustee that show the reasons for the BestEgg Loans. Nor has the U.S. Trustee been provided with any documentation regarding the Non-filing Spouse's Credit Card Accounts to enable the U.S. Trustee to determine if the credit cards were used to pay for household expenses or were used to pay for individual expenses of the Non-filing Spouse. Without such documentation, Debtor has failed to establish his entitlement to the marital adjustment claimed.

### 2. Tax Withholding

Line 16 of the Means Test form allows a deduction for the "total monthly amount that you will actually owe for federal, state and local taxes[.]" Official Form 122A-2. Debtor claimed a line 16 deduction in the amount of $1,890.00. The U.S. Trustee's calculation reduces this amount to $1,078.63 based on Debtor's payment advices for the Means Test lookback period. Debtor's counsel argues that Non-filing Spouse does not have taxes withheld from her bonuses as is required so she must do so on her own. Thus, Debtor should be able to deduct the added tax withholding from Non-filing Spouse's bonus as a special circumstance. The U.S. Trustee responds that Debtor owed tax in 2022 because the Debtor and Non-filing Spouse were under-withholding during that period and the tax owed was not just for Non-filing Spouse's bonus. Further, the U.S. Trustee argues that Debtor has not sufficiently shown the exact amount of taxes that Non-filing Spouse will be withholding nor any other documentation relating to Non-filing Spouse's taxes, thus Non-filing Spouse's tax withholdings do not qualify as a special circumstance.

First, line 16 must represent an estimate for *actual* tax liabilities. *See In re Robinette,* No. 7–06–10585, 2007 WL 2955960 at *3 (Bankr. D.N.M. Oct. 2, 2007) (the amount

11

withheld is the appropriate amount for line 25 [now line 16] because no tax refund is anticipated); *In re Lipford*, 397 B.R. 320, 334 (Bankr. M.D.N.C. 2008) (stating "the payroll withholding amounts for taxes are not necessarily reliable, and therefore, a determination of the debtor's actual tax liability is necessary") (footnote omitted); *In re Barbour*, No. 09-00553-8-RDD, 2009 WL 3053697 at *5-6 (Bankr. E.D.N.C. Sept. 18, 2009) (finding a history of tax refunds indicates that the amount withheld is not an accurate portrayal of actual tax liability for the purposes of line 25 [now line 16]). The Court has no evidence of Debtor's actual tax liability for 2022 or evidence of any expected changes to that tax liability for the Means Test period. To the extent the U.S. Trustee's calculation of tax liabilities relies solely on payment advices rather than prior tax returns in conjunction with evidence of any change in income from the prior tax year, it is no more persuasive than Debtor's calculation.

Alternatively, Debtor seeks to deduct $645.00 to account for the tax-withholding of Non-filing Spouse as a special circumstance. The paying of the gross amount of bonus which requires additional withholding by Debtor and Non-filing Spouse gives rise to a necessary additional expense. While the Court agrees that additional tax expenses would be the result of a life circumstance that directly and unavoidably affects one's earning capacity or gives rise to necessary, additional expenses, Debtor must provide documentation of the actual tax liability and whether any refund will be received.

An adjustment to taxes for the Non-filing Spouse's tax withholding can be appropriate under either line 16 or line 43, assuming it reflects an estimated amount for actual tax liability. Here, there is no such documentation.

### 3. Car Expense Deduction

Next, Debtor seeks to deduct $400.00 as a special circumstance for Non-filing Spouse to finance a reliable car. At the Hearing, Debtor's counsel argued that Non-filing Spouse should not be punished for attempting to be responsible with a car payment and she should be able to use reliable transportation. In contrast, the U.S. Trustee argued that Non-filing Spouse is not currently incurring that expense so it cannot be included in the Means Test. Further, Debtor is already able to take an allowed additional operating expense for the aged vehicle because it is over six years old and has high mileage. The U.S. Trustee argues that because Debtor can deduct $200.00 for up to two vehicles as an additional operating expense, Debtor cannot also take a deduction for Non-filing Spouse to finance a new vehicle as a special circumstance. The U.S. Trustee also notes that Debtor failed to provide any documentation to support the assertion of a special circumstance as is required to make such a finding.

Given that the Means Test provides a snapshot of the debtor's financial circumstances on the petition date, a future car payment for Non-filing Spouse is not an appropriate deduction on a chapter 7 Means Test. Further, Debtor has failed to show the additional car expense deduction results from a life circumstance that directly and unavoidably affects one's earning capacity or gives rise to necessary, additional expenses and has failed to provide the required itemized accounting, documentation, and detailed explanation of the special circumstance to satisfy §707(b)(2)(B)(ii)(I)-(II).[4] Thus, Debtor's $400.00 proposed deduction for Non-filing Spouse to finance a reliable car is not a special circumstance and cannot be deducted at line 43 of the Means Test form.

---

[4] Debtor's Schedule A/B lists a 2008 Chevrolet Tahoe 1500 as "Wife's only vehicle to drive." [Doc. 12-1 at 1].

13

**4. Rental Expense Deduction**

Debtor also seeks to deduct the difference between his actual rental expense of $2,400.00 and the IRS Local Standard amount of $1,729.00 as a special circumstance. Although currently it is listed on his Means Test form [Doc. 15-1] at line 10 for $671.00. Debtor's counsel argued at the Hearing that Debtor's current actual rent of $2,400.00 is "cheap" for a family of 5 in a rental home and that Debtor's current rent is actually low compared to the surrounding rent prices. Debtor argues that the IRS Local Standard amount does not adequately represent the actual cost of rent and living expenses in the area where Debtor lives. In opposition, the U.S. Trustee argued that Debtor is misunderstanding what line 10 is used for as rent is already contemplated by the IRS in its local standards, thus actual rent would not be an item to claim. Further, the purpose of line 10 is not to dispute the IRS's amount, but rather to dispute how the U.S. Trustee allocates amounts to utilities and mortgages or rent. Lastly, the U.S. Trustee asserts that Debtor's choice to rent at a higher rate than the IRS's standards was Debtor's own choice, and this higher rate cannot be used as a special circumstance especially when Debtor has not provided any documentation to back up his assertion.

First, Debtor cannot use line 10 to take a rental expense in excess of the IRS Local Standards. As argued by the U.S. Trustee and explained by the Committee Notes to Official Form 122, the IRS's Local Standard for housing is one amount for all housing expenses. Official Form 122 (2005-2008 Committee Notes). For purposes of the Means Test, this amount is divided into a mortgage/rent component and a non-mortgage/rent component. *Id*. "The forms allow debtors to challenge the appropriateness of this method of computing the Local Standards allowance for housing and utilities and to claim any additional housing allowance to which they contend they are entitled, but the forms require specification of the basis for such a contention." *Id*. The Court

notes that Debtor took the full $806.00 allowed for non-rent housing expense, and Debtor's amended Schedule J shows a total non-rent housing expense of $877.00. [Doc. 12-1 at 10-11].

Section 707(b)(2)(A)(V) does provide for a housing expense in excess of the Local Standards, reflected on line 28 of Form 1-22A-2, "based on the actual expenses *for home energy costs* if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary[.]" It makes no similar provision for actual rental expenses in excess of the Local Standards for housing. *See also Ransom*, 562 U.S. at 75-76 ("If a debtor's actual expenses exceed the amounts listed in the tables [of IRS National and Local Standards], for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures. For the Other Necessary Expense categories, by contrast, the debtor may deduct his actual expenses, no matter how high they are.") (footnotes omitted).

Second, although Debtor asserts that rent in the Canton area is more than what Debtor currently pays, Debtor has not provided any documentation nor a detailed explanation of the special circumstances to justify the deduction on line 43 of the Means Test. *See Chambers*, 2022 WL 828301, at *4 (finding special circumstances to pay rent in excess of IRS standards for a 527-square-foot apartment when debtor's apartment was near work, had on-site storage that would otherwise necessitate an additional expense, was located in an area that debtor felt safe, and the rental market was surging). It is the Debtor's burden to provide a sufficient explanation to demonstrate the special circumstance. Without any evidence that the rental rate in Canton is higher than the IRS Local Standards or that Debtor could not have found a home for within the IRS Local Standards amount, the Court cannot find that special circumstances exist as to Debtor's rental payment amount. Thus, Debtor cannot take a deduction for the difference between Debtor's actual

15

rent and the IRS Local Standards amount at line 43 of the Means Test form without providing evidence of the necessity of the additional expense.

**III. Conclusion**

In conclusion, in order to maintain the claimed marital adjustment, Debtor must provide the U.S. Trustee with documentation regarding the original reason Non-filing Spouse incurred the BestEgg Loans and the obligations on the Credit Card Accounts. Next, the Court finds that the additional tax withholding for Non-filing Spouse's bonus could be a qualifying deduction as a tax on line 16 or a special circumstance on line 43, but that either of these adjustments require documentation of the amount of tax that must be withheld on account of the bonus. The Court further finds that Debtor cannot deduct a potential future payment for a car for Non-filing Spouse, and that such deduction will be disallowed in Debtor's Means Test calculation. Finally, Debtor cannot deduct rent in excess of the IRS Local Standards on line 10, and he cannot deduct such excess rent as a special circumstance absent evidence to substantiate such a claim. Based on the foregoing, the Court finds a presumption of abuse and will provide Debtor with further opportunity to rebut the presumption. Accordingly, it is

ORDERED that Debtor shall advise the Court within 14 days of entry of this Order if he would like the Court to schedule an evidentiary hearing on this matter; it is further

ORDERED that if Debtor does not request an evidentiary hearing, he shall have 30 days from entry of this Order to provide documentation to the U.S. Trustee to substantiate the amounts claimed for the marital adjustment, tax liability for Non-filing Spouse's bonus, and excess rent to the extent he intends to continue asserting those deductions; it is further

ORDERED that if Debtor does not wish to have an evidentiary hearing or to provide the U.S. Trustee with additional documents, he shall file a notice of the same within 30

days of entry of this Order, and in the notice advise the Court if he will consent to conversion of this case to chapter 13. If Debtor does not consent to conversion, the Court will grant the U.S. Trustee's Motion to Dismiss and dismiss this case.

**END OF ORDER**

**Distribution List**

Donald Paul Henderson
909 Idlewood Dr
Canton, GA 30115-1850

Brian R. Cahn
Brian R. Cahn and Associates, LLC
P. O. Box 3696
Cartersville, GA 30120

Michael J. Bargar
Rountree Leitman Klein & Geer LLC
Century Plaza
2987 Clairmont Road, Suite 350
Atlanta, GA 30329

Lindsay P. S. Kolba
Office of the U.S. Trustee
Suite 362
75 Ted Turner Drive, S.W.
Atlanta, GA 30303

ALL PARTIES AND CREDITORS.