

**IT IS ORDERED as set forth below:**

**Date: January 25, 2024**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IN RE:

Donald Paul Henderson,

      Debtor.

Lindsay P.S. Kolba, on behalf of the United
States Trustee,

      Movant,

v.

Donald Paul Henderson,

      Respondent.

CASE NO. 23-50381-BEM

CHAPTER 7

Contested Matter

### <u>MEMORANDUM OPINION</u>

This matter came before the Court on December 19, 2023, for an evidentiary

hearing (the "Hearing") on the _United States Trustee's Motion to Dismiss Based on Presumption_

_of Abuse Arising Under 11 U.S.C. § 707(b)(2)_ (the "Motion") filed on March 3, 2023. [Doc. 17].

Lindsay P.S. Kolba appeared on behalf of the United States Trustee (the "UST") and Brian R.

Cahn appeared on behalf of the Debtor. The Court heard testimony from Randal Douglas Ennever ("Ennever"), Donald Paul Henderson ("Debtor"), and Lynn Henderson ("Non-Filing Spouse"), and admitted Debtor's exhibits 2-15, and 19 (hereinafter, D. Ex. #) as well as UST's exhibits 5-7, and 8 (hereinafter, UST. Ex. #).

Debtor filed his Response, Opposition, and Defenses to Motion to Dismiss Filed Pursuant to 11 U.S.C. § 707(b) on April 18, 2023. [Doc. 22]. The Court entered an Order on the UST's Motion on September 27, 2023. [Doc. 34]. Two issues remained to be tried at the Hearing: (1) whether Non-Filing Spouse's Credit Card Accounts (defined *infra*) and BestEgg Loan (defined *infra*) payments can be deducted by Debtor as a marital adjustment, and (2) whether Debtor can a deduct the amount of additional rent Debtor pays above the IRS Standards amount.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## I.  Findings of Fact

Prior to the initial July 19, 2023, hearing on the Motion, the parties filed a Joint Statement of Issues and Stipulation of Facts. [Docs. 27, 28]. Thus, the following facts are stipulated by the parties:

On January 13, 2023, Debtor filed a Chapter 7 bankruptcy petition. Michael Bargar was appointed as the Chapter 7 trustee in the case. Debtor is an individual and his debts are primarily consumer. The Section 341 meeting of creditors occurred on February 8, 2023. On January 13, 2023, Debtor filed Official Form 122A-1, Chapter 7 Statement of Your Current

---

[1] To the extent, if any, that the Findings of Fact as stated may be deemed Conclusions of Law, they shall be considered Conclusions of Law. Similarly, to the extent the matters expressed as Conclusions of Law may be deemed Findings of Fact, they shall be considered Findings of Fact.

2

Monthly Income, and Official Form 122A-2, Chapter 7 Means Test Calculation (the "Means Test"), which was amended that same day when Debtor filed an amended Official Form 122A-2, Chapter 7 Means Test Calculation (the "First Amended Means Test"). [Doc. 5]. The First Amended Means Test indicates Debtor's income is above the median family income for a household of five, his monthly disposable income under § 707(b)(2) is negative $1,395.24, and the presumption of abuse does not arise. The First Amended Means Test includes a marital adjustment of $4,421.00 and a housing allowance adjustment on line 10 of $671.00 explaining that Debtor's actual market-rate rent expense is $2,400.00 per month. Debtor's First Amended Means Test also claims a special circumstances adjustment because he alleges his wife needs to finance a reliable car, which results in an additional monthly expense of $400.00. On February 27, 2023, Debtor filed an amended Official Form 122A-2, Chapter 7 Means Test Calculation (the "Second Amended Means Test") [Doc. 15] to correct a $100.00 math error, resulting in monthly disposable income under § 707(b)(2) of negative $1,295.24, instead of negative $1,395.24. The Second Amended Means Test[2], like the First Amended Means Test, includes the marital adjustment of $4,421.00, the adjustment on line 10 of $671.00, and asserts the special circumstances adjustment in the amount of $400.00. Debtor is not currently paying any amounts on a monthly basis as a result of his alleged special circumstance of needing to replace his wife's vehicle.[3]

Debtor is currently employed as a warehouse manager at Pulsed Power Technologies, LLC ("PPT"). He has been employed at PPT for more than four years. His Current Monthly Income from wages is $5,601.28.[4] In addition to wages, Debtor earns about $409.17 per

---

[2] Debtor filed a third Amended Means Test on December 18, 2023. [Doc. 46].

[3] In the September 27, 2023 Order, the Court disallowed this adjustment. [Doc. 34].

[4] [4] The Code defines "current monthly income", in relevant part, as "the average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on — (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii)." 11 U.S.C. § 101(10A)(A)(i). Thus, Debtor's current monthly income is $5,601.28 plus $409.17 or $6,010.45.

month selling items on eBay. Debtor is married to Non-Filing Spouse (Debtor and Non-Filing Spouse are the "Hendersons"). Non-Filing Spouse is currently employed in customer service by Cellco Partnership ("Cellco") where she has worked for over 21 years. Non-Filing Spouse's average gross monthly income for the period of July 1, 2022 to December 31, 2022, was $7,002.64. The Henderson's total average gross monthly income during July 1, 2022 to December 31, 2022, was $13,013.08. Non-Filing Spouse does not have any sources of income other than her employment at Cellco.

During the six-month look-back period covered by the Means Test, Non-Filing Spouse had $2,142.13 per month withheld from her paycheck for taxes and other payroll deductions. On April 29, 2021, Non-Filing Spouse individually borrowed $31,911.50 from BestEgg at 17.09% interest with a five-year term (the "First BestEgg Loan"). Based upon documents produced, Non-Filing Spouse's monthly minimum payment on the First BestEgg Loan is $794.63. On January 13, 2022, Non-Filing Spouse individually borrowed $20,500.00 from BestEgg at 20.51% interest with a five-year term (the "Second BestEgg Loan" and with the First BestEgg Loan, the "BestEgg Loans"). Based upon documents produced, Non-Filing Spouse's monthly minimum payment on the Second BestEgg Loan is $548.96. Non-Filing Spouse has thirteen credit cards in her individual name with balances for which she makes monthly payments (the "Credit Card Accounts"). Based upon documents produced, the total of the monthly minimum payments for Non-Filing Spouse's Credit Card Accounts is $1,656.24. According to the bankruptcy schedules, Non-Filing Spouse actually pays a total of $2,643.00 monthly to service the BestEgg Loans and the Credit Card Accounts. According to the bankruptcy schedules, Non-Filing Spouse contributes $3,049.00 per month (the remainder of her $5,692.00 net income after payment of BestEgg Loans and the Credit Card Accounts), toward the household expenses, which are

projected in Schedule J to total $7,351.00 monthly ($9,994.00 total, less the $2,643.00 paid by Non-Filing Spouse to the BestEgg Loans and Credit Card Accounts).

The Henderson family (Debtor, Non-Filing Spouse, and their three children) live in a leased residence at 909 Idlewood Dr., Canton, GA, 30115 (the "Idlewood Property"). The Idlewood Property is a four-bedroom, three-bathroom single-family house with approximately 2,508 residential square feet, exclusive of an unfinished basement. The Idlewood Property is located in Cherokee County. The applicable IRS housing allowance for mortgage or rent expenses for a household size of five or more people in Cherokee County, Georgia, is $1,729.00, but the Henderson's actual cost to lease the Idlewood Property is $2,400.00 per month.

The following facts are found from the evidence admitted at the Hearing, Debtor testified that his current rent of $2,400.00 is a reasonable rental rate in the Cherokee county area as he could not find anything comparable that was cheaper than his current rate for a 4-bedroom 3-bathroom house when he conducted a Zillow search. Debtor only searched for houses within his school district as his minor children would be impacted if the family had to change districts. Debtor testified that none of his children have special needs that would require him to remain in a specific school district. Non-Filing Spouse emphasized that remaining in a house with individual bedrooms for each of the children was of importance to her. Debtor's subdivision includes amenities of a clubhouse available for rent, tennis court, basketball court, lake, and a pool. Prior to renting the current house, the Hendersons lived in a house Debtor owned close by the current rental house. Debtor sold the previous house about two years ago and used the proceeds of the sale to pay off his credit card debt.

In discussing the couple's financial dynamic, Debtor testified that he and Non-Filing Spouse keep their finances entirely separate including with separate bank and credit card

accounts and individual loan obligations, such that when looking through D. Exs. 2-15, Debtor stated he was wholly unaware of what Non-Filing Spouse spends her money on. Debtor testified that he splits household expenses with Non-Filing Spouse as follows: he pays for the cars and any related maintenance, utilities, food and groceries, and contributes $150.00 to the monthly rent. [D. Ex. 19]. Debtor testified that he no longer has any credit cards and solely uses his debit card for purchases. Non-Filing Spouse pays the remainder of the rent and for the children's clothing, medical bills, sporting events and related travel. Debtor testified that after all of his expenses are paid, he has no income left.

Non-Filing Spouse manages her expenses through making minimum payments on her credit cards, obtaining loans to pay off the credit card balance, and then repeats the cycle as needed. Non-Filing Spouse testified that the BestEgg Loans in Debtor's Exhibits 2 and 3 were used for this purpose as well as to occasionally pay minimum balances due if she did not have enough income to cover the balance. She does not have a budget and does not see her cycle of incurring more debt to keep the credit card minimum balances paid ending in the near future, if at all. Upon review of the Credit Card Account statements in Debtor's Exhibits 6-15, Non-Filing Spouse stated that the balance on her Credit Card Accounts did increase throughout the month due to her added expenditures, although she attributed the monthly minimum payment solely to interest and fees. Specifically, Non-Filing Spouse testified that her credit cards ending in account numbers x7228, x7418, x7957, x2002, x3497, x3215, x9437, x2709, x3136, x2824 were all used for the same reasons including for food, her children's sporting events, travel, clothing, and the parties' cellphone bill. [D. Exs. 6-15]. Non-Filing Spouse received a Chapter 7 discharge approximately seven (7) years ago.

6

Ennever, the UST's analyst, who's job duties include reviewing bankruptcy petitions and schedules, and determining whether the presumption of abuse arises in Chapter 7 cases, was assigned to review Debtor's case and examined all of the documents filed and produced. As shown in UST Ex. 7, he calculated the payroll tax deductions by using the tax withholding amounts for year to date of both federal and state tax returns from 2022. [UST. Ex. 6]. He also calculated total payroll deductions by deducting the amount of Debtor's savings plan contributions, life insurance, health, dental, and vision insurance and determined that Debtor's monthly disposable income on the Means Test exceeded the statutory amount for abuse to arise. [UST. Ex. 9]. Ennever's review of Non-Filing Spouse's Credit Card Accounts and BestEgg Loans revealed they were used for regular household expenses (i.e. food, clothing, utilities, insurance, etc.), such that Debtor cannot deduct the Credit Card Accounts and BestEgg Loan payments as a marital adjustment in the Means Test calculation, even though the obligations were of the Non-Filing Spouse, not of Debtor. [D. Exs. 2-15].

## II.        Positions of the Parties

The UST seeks dismissal of Debtor's case based on a presumption of abuse under 11 U.S.C. § 707(b)(2). The UST argues that the Credit Card Accounts and BestEgg Loans were used to pay for household expenses, which are included in the calculation of CMI through the IRS Standards allowance. To receive a marital adjustment for the Non-Filing Spouse's Credit Card Accounts and BestEgg Loans payments, Debtor must show special circumstances, which are not present here. From the evidence presented at the Hearing, the UST asserts no single document shows that Non-Filing Spouse used the Credit Card Accounts or the BestEgg Loans for anything other than household expenses including food, travel, and expenses pertaining to the Henderson's

children. Thus, because the Credit Card Accounts and BestEgg Loans were used for household expenses, these amounts cannot be claimed as a marital adjustment.

The UST relies on *In re Tapply*, where the court disallowed a marital adjustment for credit card payments of debtor's spouse because that type of expense charged to the credit card is already included in the IRS National/Local Standards (the "IRS Standards") and would constitute double dipping if debtor were allowed to also deduct the expenses as a marital adjustment. 652 B.R. 124, 132 (Bankr. D. Mass. 2023). The UST asserts Debtor has failed to present evidence of a special circumstance such as a prolonged period of unemployment or a family member that suffers from a serious medical condition.

The UST argues further that even if Debtor could show special circumstances, Debtor would still fail the Means Test because a housing deduction for rent in excess of the IRS Standards is improper as Debtor did not provide evidence that Debtor could not have found suitable housing for the amount contemplated in the IRS Standards. See *In re Delunas*, No. 06-43133-705, 2007 WL 737763, *2 (Bankr. E.D. Mo. Mar. 6, 2007) (court found debtors' daughter's mental condition of depression did not amount to a special circumstance that would require debtors to stay in a house with bedrooms for each individual child as they preferred, rather debtors did not establish that complying with the IRS Standards "completely 'prices out'" debtors from receiving free bussing instead of just pricing them out of accommodations that they prefer). In conclusion, the UST argues Debtor has failed to rebut the presumption of abuse, and his case should be dismissed.

Debtor argues to the contrary that under 11 U.S.C. § 101(10A), current monthly income includes the income of a spouse only if the case is a jointly filed case. Since Debtor filed this case individually only Debtor's household expenses should be included in CMI, not the

expenses incurred by Non-Filing Spouse. The only regular contribution of Non-Filing Spouse to household expenses is for rent, which as Non-Filing Spouse testified is often paid for on her credit cards that are paid off with her loans, which constitute borrowed money, rather than income. Non-Filing Spouse's borrowed money is not income for purposes of the CMI calculation and therefore would not affect Debtor's CMI on the Means Test. This concept of borrowed money instead of income is further evidenced by Non-Filing Spouse's lack of residual income remaining after all of her expenses are paid, including rent and servicing her Credit Card Accounts and Best Egg Loans each month. Thus, Debtor's CMI is below median, so there is nothing to rebut. However, if the Court considers Non-Filing Spouse's borrowed money as income, the Court would be putting a judicial gloss on the statute and reading into it words that are not present.

Debtor relies on *In re Carlyle*, to suggest that courts have recognized two lines of interpretation of § 101(10A), the plain language approach and the benefit approach. No. 12-11923, 2013 WL 3777096, *3 (Bankr. S.D. Ga. July 17, 2013). The benefit approach cases hold that "payments made by the nonfiling spouse that benefit the debtor in some way may not be deducted on Line 13 or 19." *Id.* Whereas, the plain language approach allows a marital deduction when the "debtor does not possess an ownership interest in the property." *Id.* The court in *Carlyle* took the plain language approach and found that debtor's non-filing spouse's payments for his truck are not items "paid on a regular basis for the household expenses of" the debtor and her dependents because the non-filing spouse bought the truck before they were married, uses the truck for personal errands and work, and pays for the maintenance and insurance on the truck from his own personal bank account. *Id.* at *4.

Here, Debtor asserts there is no duplication of expenses between Debtor and Non-Filing Spouse, especially since a large percent of Non-Filing Spouse's payment on her Credit Card

Accounts is attributed to interest and fees rather than any new purchases. Debtor argues further that he should be able to deduct the additional rent he pays over and above the IRS Standards for housing because Line 10 on the Means Test recognizes that the IRS Standards are not adjusted in real time such that the market prices may not be properly reflected in those deductions. Debtor's testimony supports a deduction for excess rental expense because he sought out other more affordable options and could not find housing for less. In conclusion, if the Court finds the presumption of abuse arises in this case, Debtor has successfully overcome it, so the Court should deny the UST's Motion.

Ultimately, Debtor asserts that if he cannot proceed in a Chapter 7 case, because he is unable to fund a Chapter 13 case, he will be left without a bankruptcy remedy and will be penalized for the imprudent expenditures and debts of his wife over which he has no control, all while he has worked to correct his prior financial mistakes. Thus, he argues the Court should allow this case to continue in Chapter 7.

## III.        Legal Standards

In cases filed under Chapter 7 of the Bankruptcy Code, "the Means Test serves as a 'screening mechanism to determine whether a Chapter 7 proceeding is appropriate.'" *In re Rivers*, 466 B.R. 558, 560 (Bankr. M.D. Fla. 2012) (quoting *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 65 n.1, 131 S. Ct. 716, 722 n.1 (2011)). The Means Test was added to the Code when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to address perceived abuses of the bankruptcy system. *In re Norwood-Hill*, 403 B.R. 905, 907-08 (Bankr. M.D. Fla. 2009). One such change is reflected in 11 U.S.C. § 707(b), which states that the court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the

provisions of this chapter." 11 U.S.C. § 707(b)(1). Section 707(b)(2) creates a presumption of abuse "if the debtor runs afoul of the so-called '[M]eans [T]est.'" *In re Witcher*, 702 F.3d 619, 621 (11th Cir. 2012). "If a presumption of abuse arises under the [M]eans [T]est and is not rebutted, the court may dismiss or convert the chapter 7 case." *Id.* (citing 11 U.S.C. §§ 707(b)(1), 707(b)(2)).

The Means Test provides a rote, mathematical calculation to guide courts' analyses on whether a Chapter 7 filing is presumed abusive. *Townson v. Ruff* (*In re Ruff*), 639 B.R. 772, 777 (Bankr. N.D. Ga. 2022) (Bonapfel, J.). Specifically, "the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of . . . 25 percent of the debtor's nonpriority unsecured claims in the case, or $9,075, whichever is greater; or . . . $15,150." § 707(b)(2)(A)(I)-(II). In other words, a Chapter 7 filing is presumed to be abusive if the debtor's finances mechanically reflect an ability to fund a repayment plan to his or her creditors. *In re Thompson,* 457 B.R. 872, 875 (Bankr. M. Fla. 2011) ("A Chapter 7 filing is presumed abusive is there is disposable income . . . to fund a sixty-month plan[.]").

Debtors are permitted to deduct certain expenses in their calculations, but only at the amount sanctioned in the IRS Standards. In calculating whether the presumption of abuse arises, debtors may deduct housing expenses in the amounts specified in the IRS Standards. If a debtor's actual expenses are less than the amount specified by the IRS Standard, then the debtor gets a break. If his expenses are greater than the specified IRS Standards, on the other hand, the debtor must nevertheless use the IRS Standards amount. This was the ruling in *Ransom*, where the Supreme Court held that, under § 707(b)(2)(A)(ii), "applicable" expenses of the IRS Standards are limited by the amounts specified therein. 562 U.S. at 75, 131 S. Ct. at 727; see *In re Bartlett*, 2023

Bankr. LEXIS 149, *10-11 (Bankr. N.M. Jan. 20, 2023) (disallowing the additional rent in the debtor's Means Test calculation).

Importantly, bankruptcy courts in the Eleventh Circuit have treated the Means Test as a mechanical, bright-line rule by taking a "'snapshot' of the debtor's finances as of the petition date and [not factoring] into consideration a debtor's future intentions." *In re Henderson,* 2023 Bankr. LEXIS 2377, *11 (Bankr. N.D. Ga. Sept. 27, 2023) (Ellis-Monro, J.); see also *Norwood-Hill*, 403 B.R. at 909; *In re Lee*, 640 B.R. 943, 947-48 (Bankr. M.D. Ga. 2022) (the "snapshot" interpretation is the appropriate approach under § 707(b)(2)); *In re Benedetti*, 372 B.R. 90, 96-97 (Bankr. S.D. Fla. 2007) ("a 'snapshot' view of the Debtor's expenses on the date of filing makes sense in the context of a Chapter 7 case").

### A. Marital Adjustment

The starting point for the Means Test is current monthly income ("CMI'), which "includes any amount paid by any entity other than the debtor … on a regular basis for the household expenses of the debtor or the debtor's dependents[.]" 11 U.S.C. § 101(10A)(B)(i). When a debtor and a non-filing spouse live in the same household, the form for calculating CMI includes all income of the non-filing spouse. See Official Form 122A-1, Line 1. Then, on the Means Test form, Line 3 instructs the debtor to "[a]djust your current monthly income by subtracting any part of your spouse's income not used to pay for the household expenses of you or your dependents." Therefore, the Means Test allows the debtor to deduct from CMI any amounts of a non-filing spouse's income that is not used for household expenses, which is known as the marital adjustment. Official Form 22 (2005-2008 Committee Notes). As it pertains to the marital adjustment, the UST "must initially demonstrate 'how much, if any, of a non-filing spouse's income should be imputed to a debtor when making the disposable income calculation.'" *In re Montalto*, 537 B.R. 147, 153

(Bankr. E.D.N.Y. 2015) (quoting *In re Roll*, 400 B.R. 674, 677 (Bankr. W.D. Wis. 2008)) (other citations omitted). "However, the debtor cannot 'arbitrarily pick a number out of the air for a marital adjustment ... without providing sufficient documentation, when it is requested by the objecting party, to show that the claimed amounts are properly deducted.'" *Id.* (quoting *In re Dugan*, No. 07–40899, 2008 WL 3558217, at *5 (Bankr. D. Kan. Aug. 12, 2008) (Chapter 13 case)) (alteration in original). The burden is on the debtor to itemize and substantiate the basis for a marital adjustment. *In re Kulakowski*, No. 10-BK-07286-CED, 2011 WL 3878386, at *5-6 (Bankr. M.D. Fla. Sept. 2, 2011), *aff'd*, 735 F.3d 1296 (11th Cir. 2013); see *Montalto*, 537 B.R. at 153 ("it is ultimately the debtor's burden to prove which expenses are purely personal to the non-filing spouse" because "the facts necessary to prove whether certain expenses are household or non-household are almost entirely within the control of the debtor").

As argued by Debtor's attorney, there is a split in authority interpreting what should be included in a debtor's CMI under § 101(10A)(B)(i). *In re Carlyle*, 2013 WL 3777096 at *3 (Chapter 13 case). One line of cases adopts a "for the benefit of the debtor approach," under which "payments made by the nonfiling spouse that benefit the debtor in some way may not be deducted" in the marital adjustment. *Id.* The other adopts a plain language, or "debtor-centric approach" under which such payments may be deducted in the marital adjustment when they are individual expenses of the non-debtor even if the debtor indirectly benefits. *Id.*

In *In re Vollen,* 426 B.R. 359, 373 (Bankr. D. Kan. 2010) (Chapter 13 case), the court took the benefit of the debtor approach. There the court considered, among other deductions, whether debtor's non-filing spouse's loan payments on both a personal loan and a car loan where non-filing spouse is solely liable could be claimed as a marital adjustment. *Id.* at 373. After reviewing the non-filing spouse's credit card statements which were paid off by non-filing

13

spouse's loan disbursements, the court concluded that almost all of the expenses were for "food, apparel, and other personal incidental expenses," which are household expenses. *Id.* The court found that the credit card charges for the debtor's daughter's clothing, non-filing spouse's lunch purchases during the workday, and non-filing spouse's personal loan repayment which was used for car repairs and to refinance credit card debt are part of household expenses. *Id.* Thus, debtor was unable to claim a marital adjustment for these expenses. *Id.* at 374. See also *In re Persaud*, 486 B.R. 251 (Bankr.E.D.N.Y.2013) (holding no marital adjustment for non-filing spouse's private school tuition payments of his and debtor's children).

In contrast *Carlyle*, takes the plain language, debtor-centric approach. 2013 WL 3777096 at *4. At issue in *Carlyle* was whether debtor's non-filing spouse's payments on his truck should be included in debtor's CMI as items "paid on a regular basis for the household expenses of [Debtor or Debtor's dependents]." 2013 WL 3777096 at *4. The court held that a marital adjustment is proper for the non-filing spouse's loan payments for his truck because he purchased the truck before their marriage, he uses the truck for personal errands and transportation to work, debtor is not an owner of the truck nor is she on the loan documents, and he pays for the loan with his personal bank account. *Id.* Thus, non-filing spouse's loan payments for his truck did not constitute payments made on a regular basis for household expenses of the debtor or her dependents. *Id;* see also *In re Borders,* No. 07-12450, 2008 WL 1925190, *3 (Bankr. S.D. Ala. April 30, 2008) (holding that a non-filing spouse's credit card bills and health insurance premiums may be deducted as marital adjustments even though they may indirectly benefit the debtor, they are still individual expenses of a non-debtor); *In re Shahan*, 367 B.R. 732 (Bankr. D. Kan.2007) (allowing marital adjustment for non-filing spouse's monthly payments for the family's house and car because both were solely titled in non-filing spouse's name).

*In re Toxvard* took a similar approach in delineating whether a marital adjustment was proper for debtor's non-filing spouse's household expenses by first determining whether the household expense is solely the debtor's expense. 485 B.R. 423, 436 (Bankr. D. Colo. 2013) (Chapter 13 case). If so, then the debtor must include non-filing spouse's entire payment of such expense into her calculation of disposable income. *Id.* But if the household expense was solely non-filing spouse's expense, then the debtor can deduct the entire expense. *Id.* However, if the household expense is a joint obligation, then the debtor must include non-filing spouse's payment to the extent it satisfies the debtor's share of the obligation. *Id.* Following that method, the court found that among other expenses, the non-filing spouse's payments towards maintenance of real property that non-filing spouse solely owned could be deducted as a marital adjustment, while expenses like household utilities and a shared medical, dental, and vision insurance plan that are joint obligations of the debtor and non-filing spouse can only be deducted in an amount reduced by 50 percent. *Id.* at 439-41.

The Court agrees with the approach in *Toxvard*. Here, Debtor is seeking to claim a marital adjustment for the Credit Card Accounts and BestEgg loans incurred and owed exclusively by Non-filing Spouse because Debtor argues these expenses are not included in Debtor's CMI as regular household expenses under § 101(10A)(B)(i). "The general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Coggin Auto. Corp. v. Comm'r*, 292 F.3d 1326, 1332 (11th Cir. 2002) (citing *Caminetti v. United States*, 242 U.S. 470, 37 S. Ct. 192 (1917)); see also *Ransom,* 562 U.S. at 69, 131 S. Ct. at 723-24 (quoting *U.S. v. Ron Pair Enter., Inc*., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989)). "'[W]hen the terms of a statute are clear, its language is conclusive and courts are not free to replace that clear language with an unenacted legislative intent.'" *Id.* (quoting *United States v. Morison*, 844

F.2d 1057, 1064 (4th Cir.1988)). Like the Supreme Court and the Eleventh Circuit precedent demand, this Court will look to the plain language of § 101(10A)(B)(i) to discern whether a marital adjustment is proper here.

On a plain reading, § 101 (10A)(B), distinguishes between the household expenses of the debtor in an individual filing and the household expenses of the debtor and the debtor's spouse in a joint filing. *Toxvard*, 485 B.R. at 430. "In an individual bankruptcy filing, current monthly income includes a non-filing spouse's regular payments toward 'the household expenses *of the debtor*,' whereas in a joint filing, current monthly income includes the regular contributions from any entity toward the 'household expenses ... of the debtor *and the debtor's spouse*.'" *Id*. (emphasis in original). In an individual filing § 101 (10A)(B)(i) provides that "current monthly income includes any amount paid by any entity other than debtor … on a regular basis for household expenses of debtor or debtor's dependents." 11 U.S.C. § 101 (10A)(B)(i). The Code is clear that Debtor's CMI includes payments by a non-debtor for the household expenses of the debtor's dependents. Thus, the Court must include those expenses which are the Debtor's or his dependents' in CMI.

Both Debtor and Non-Filing Spouse testified that their finances are kept entirely separate whereby each maintains their own bank accounts, credit cards (if any), and loans. Debtor testified that the only household expenses Non-Filing Spouse contributes to is rent and the entirety of the couple's cellphone bill. Non-Filing Spouse took out the BestEgg loans specifically to pay off the balances on her credit cards and occasionally uses any remaining loan money to pay monthly minimum balances due on her credit cards. Debtor testified that he no longer uses credit cards, instead opting to use only his debit card. Non-Filing Spouse used the Credit Card Accounts to pay for food, her children's sporting events, travel, clothing, and the parties' cellphone bill.

16

Non-Filing Spouse is solely liable for the Credit Card Accounts and BestEgg loans, Debtor is not involved in the servicing of these debts nor is he liable. Debtor urged the Court to acknowledge the separate nature of the couple's finances and not subject Debtor to the imprudent financial decisions of Non-Filing Spouse, when he has no control over how she spends her money.

As stated above, in *Toxvard*, the court applied the plain language, debtor-centric, approach, that provides that if the household expense was solely non-filing spouse's expense, then the debtor can deduct the entire expense. Debtor can deduct expenses of Non-Filing Spouse related to specific property when he does not possess an interest in the property and does not have an obligation associated with the property. However, if the household expense is a joint obligation, then Debtor must include the amount paid for the expense in CMI.

Here, the Credit Card Accounts and BestEgg loans are solely Non-Filing Spouse's responsibility and Debtor has no liability for them. However, because Debtor and Non-Filing Spouse both have an obligation to pay the rent and both contribute to it, payment of the rent is included in Debtor's CMI. Additionally, § 101(10A)(B)(i) includes household expenses related to Debtor's dependents. Debtor has three minor children. Non-Filing Spouse testified that she uses the Credit Card Accounts and BestEgg loans to pay for the children's sporting events and related travel as well as for their clothing. Under Georgia law, both parents have a joint and several duty "to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated...." O.C.G.A § 19-7-2. Because the children's expenses are joint obligations of Debtor and Non-Filing Spouse, fifty percent of Non-Filing Spouse's contribution to the household expenses of the minor children is included in Debtor's CMI and is not deducted as a marital adjustment. See *Toxvard*, 485 B.R. at 439-41 (court

attributed fifty percent of joint obligations like utilities, medical, dental, and vision insurance, and a joint car loan to the debtor to be included in CMI while the other fifty percent is deducted).

The Court notes that at the Hearing, specific amounts detailing Non-Filing Spouse's expenditures on the children's household expenses were not presented, although the UST elicited testimony from Non-Filing Spouse that indicated the Credit Card Accounts were largely used for the children's expenses. The Court's review of the Credit Card Account statements as provided in D. Exs. 6-15 from June 2022-December 2022, the 6 month look-back period, similarly shows that the vast majority of the expenses were for the children. Because the children's expenses are joint obligations of Debtor and Non-Filing Spouse these expenses are split equally between them such that fifty percent of Non-Filing Spouse's contribution to the children's expenses must be included in Debtor's CMI. Once the UST questioned the marital adjustment amount it was incumbent upon Debtor to establish that the amount of the adjustment is accurate through documents provided to the objecting party. This was not done as the Credit Card Account statements produced did not cover the full 6 month look back period and many of the statements were for the postpetition time period. Based on the testimony and the review of Debtor's Exhibits, the Court concludes that fifty percent of Non-Filing Spouse's total monthly minimum payments of $2,890.83 due on the Credit Card Accounts and BestEgg loans [D. Ex. 1] is attributable to Debtor as his share of the children's expenses. Debtor must include fifty percent of $2,890.83, or $1,445.41 in his CMI and may deduct the other fifty percent, or $1,445.42 as a marital adjustment.

### B. Special Circumstances

A presumption of abuse can be rebutted by a demonstration of "special circumstances" such as a serious medical condition or active-duty military service, which justify "additional expenses or adjustments to current monthly income for which there is no reasonable

alternative." 11 U.S.C. § 707(b)(2)(B)(i). Debtor has the burden of establishing special circumstances through documentation and explanation of the special circumstances. *Id.* § 707(b)(2)(B)(ii)-(iii).

Determining if special circumstances exist is a "'fact-specific, case-by-case inquiry into whether the debtor has a "meaningful ability" to pay his or her debts in light of an additional expense or adjustment to income not otherwise reflected in the means test calculation.'" *In re Knight*, 370 B.R. 429, 437-38 (Bankr. N.D. Ga. 2007) (Bonapfel, J.) (Chapter 13 case) (quoting *In re Delbecq*, 368 B.R. 754, 756-59 (Bankr. S.D. Ind. 2007)). To show special circumstances, "the debtor must provide an itemized accounting of each additional expense or adjustment to income and provide (1) documentation of said expenses and/or adjustments to income, and (2) a detailed explanation of the special circumstances that make the added expenses and/or adjustments to income necessary and reasonable." *In re Walker*, No. 19-57404-PMB, 2019 WL 5866154, at *2 (Bankr. N.D. Ga. Nov. 8, 2019) (Baisier, J.) (citing 11 U.S.C. § 707(b)(2)(B)(ii)(I)-(II)). "Generally, a special circumstance satisfying these requirements will arise out of extraordinary or exceptional circumstances, or situations otherwise beyond the debtor's control." *Id.* (citing *In re Brown*, 500 B.R. 255, 262 (Bankr. S.D. Ga. 2013) (Chapter 13 case)).

Courts in the Eleventh Circuit have determined that special circumstances are not limited solely to serious medical conditions and active-duty military status as noted in the Code, rather circumstances similar in nature to those examples are sufficient to rebut the presumption of abuse. *In re Chambers*, No. 3:21-BK-1301-JAF, 2022 WL 828301, at *3 (Bankr. M.D. Fla. Mar. 18, 2022) (citing *In re Turner*, 376 B.R. 370, 378 (Bankr. D.N.H. 2007); *In re Tauter*, 402 B.R. 903, 906 (Bankr. M.D. Fla. 2009)). "The similarity in nature of the two examples [in the Code] is that they are life circumstances that directly and unavoidably affect one's earning capacity or give

rise to necessary, additional expenses." *Chambers,* 2022 WL 828301 at *3 (quoting *In re Smith,* 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008)). Further, a special circumstance has been defined as "one that, if the debtor is not permitted to adjust her income or expenses accordingly, results in a demonstrable economic unfairness prejudicial to the debtor." *Knight*, 370 B.R. at 437-38. See also *Chambers,* 2022 WL 828301, at *4 (the amount of rent paid which exceeds the IRS standard and monthly pet expenses qualify as special circumstances); *Walker*, 2019 WL 5866154, at *3 (debtor's desire to eventually retire does not constitute a special circumstance); *In re Anderson*, 444 B.R. 505, 508 (Bankr. W.D.N.Y. 2011) (age by itself and the "mere desire for retirement" is not a special circumstance); *In re Cribbs*, 387 B.R. 324, 327-330 (Bankr. S.D. Ga. 2008) (repayment of 401(k) loan was a special circumstance due to the reasons for taking the loan); *In re Stocker*, 399 B.R. 522, 524, 527-28 (Bankr. M.D. Fla. 2008) (Antenuptial Agreement between husband and wife, which they did not adhere to and which resulted in the expending of all of debtor's monthly income, is not a special circumstance)[5]; *In re Patterson*, 392 B.R. 497, 504 (Bankr. S.D. Fla. 2008) (expenses for a storage unit, unreimbursed expenses for food while debtor's husband is traveling for work, living expenses of debtor's adult daughter living away at college, and student loan payments, all do not qualify as special circumstances); *In re Hernandez*, No. 08-31588, 2008 WL 5441279, at *5 (Bankr. N.D. Ohio Dec. 1, 2008) (voluntary lifestyle changes of postpetition marriage and decrease in work hours are not special circumstances).

Debtor seeks to deduct the difference between his actual rental expense of $2,400.00 and the IRS Standards amount of $1,729.00 as a special circumstance. Debtor argues that the IRS Standards are not updated in real time and do not accurately reflect the current rental market in Cherokee County. To support this assertion Debtor testified he conducted a Zillow

---

[5] The court in *Stocker* found that the debtor had "a meaningful ability to repay her debts" and had "manipulated the means test in an attempt to obtain relief to which she is not entitled." 399 B.R. at 532.

search of homes with 4 bedrooms and 3 bathrooms in the neighborhood and only found homes for rent at rates higher than his current rate. Debtor did not conduct a search to determine if there were other houses in surrounding areas that were available for less than his current rental property. Non-Filing Spouse agreed that rent in the Cherokee County area is higher than her current rental rate for the same type of house.

The UST argues Debtor did not do an adequate search to discover if less costly rental housing was available in Cherokee County or in neighboring areas. The reasoning for the limited search for other rental houses was the Henderson's preference for each child having their own bedroom and remaining at the same school. The UST emphasized that none of Debtor's children have special needs or are required to be in a specific school district, such that Debtor could live elsewhere. Ultimately, the UST argues that Debtor has not provided a sufficient reason for why living in a 4-bedroom 3-bathroom home with a wealth of community amenities would warrant Debtor taking a deduction for the additional rent beyond the IRS Standard, when there are other viable and less costly housing options available to Debtor.

Debtor has the burden of proof to establish that he is subject to a special circumstance which requires the additional housing expenses. The only evidence presented by Debtor to substantiate his claim for special circumstances was a Zillow search he conducted that was limited to the school district that the children were in when Debtor owned a house in the neighborhood. The Zillow search was not admitted into evidence and the UST did not present any contradicting evidence. But, because Debtor has the burden to show that paying this rental rate is a matter that is out of Debtor's control and there was no evidence beyond the Henderson's preference for the current school district and that each of their children have their own room, there

21

was insufficient evidence to support a finding of special circumstance; thus, Debtor is not entitled to take the rent adjustment on line 43 of the Means Test.

With the adjustment to the amount of the marital adjustment and disallowing the additional rent claimed, Debtor's Means Test results in the following calculations: Debtor and Non-Filing Spouse's total combined monthly income is $13,013.08 on line 1 of the Means Test, on line 3 of the Means Test the calculation for the marital adjustment is deduction for Non-Filing Spouse's payroll taxes of $2,142.13 and then $1,445.42 for the Credit Card Accounts and the Best Egg loan repayments, which results in a total marital adjustment of $3,587.55 (The resulting currently monthly income totals $9,425.54.

The next step on the Means Test is to subtract the allowed deductions for 1) IRS – Food, Clothing, Household, etc., 2) IRS – Healthcare Standard, 3) IRS – Non-Mortgage (Insurance & Utilities), 4) IRS – Mortgage or Rent, 5) IRS – Vehicle Operations, 6) IRS – Vehicle Ownership (Vehicle 1), 7) Taxes, 8) Life Insurance, and 9) Childcare which totals $8,075.00 in allowed deductions. The final set of allowed deductions are for 1) Health, Disability Insurance, HSA Expense, 2) Charitable Contributions, 3) Vehicle, and 4) Chapter 13 Administrative Expense which results in an addition of $607.00 in allowed deductions. Altogether, Debtor is allowed deductions of $8,682.83 from his CMI of $9,425.54 (which includes the allowed marital adjustment). Subtracting the allowed deductions of $8,682.83 from Debtor's CMI of $9,425.54, results in Debtor's monthly disposable income of $742.70. Debtor's 60-month disposable income would be $44,562.00 which is greater than both 25% of Debtor's non-priority unsecured claims ($19,257.50) and $15,150.00, thus the presumption of abuse arises under § 707(b)(2)(A)(I)-(II).

Debtor argues that if his version of the Means Test is not allowed, he will have no bankruptcy remedy. However, Debtor is still able to file a Chapter 13 bankruptcy case either

individually or jointly. Should Debtor and Non-Filing Spouse choose to file a Chapter 13 case, they could fund their living expenses while paying some amount to creditors. This would certainly require some belt tightening which could include a less expensive residence and fewer expenditures for sports and restaurant meals. In any case, the non-discretionary calculations required by the Means Test determine that this case is an abuse of the provisions of Chapter 7 of the Code and the Court must dismiss the case. Debtor also has the opportunity to convert this case to Chapter 13 should he wish.

In conclusion, for the foregoing reasons, it is

ORDERED that Debtor can deduct $1,445.42 as a marital adjustment at line 3 of the Means Test for Non-Filing Spouse's Credit Card Accounts and BestEgg loan monthly minimum payments. It is further,

ORDERED that Debtor cannot deduct the additional rent amount above the IRS Standard as a special circumstance on line 43 of the Means Test. It is further,

ORDERED that UST's Motions is GRANTED such that if Debtor does not file a motion to convert within ten (10) days after entry of this Order, the Court will dismiss this case without further notice or hearng.

**END OF ORDER**

**<u>Distribution List</u>**

Donald Paul Henderson
909 Idlewood Dr
Canton, GA 30115-1850

Brian R. Cahn
Brian R. Cahn and Associates, LLC
P. O. Box 3696
Cartersville, GA 30120

Michael J. Bargar
Rountree Leitman Klein & Geer LLC
Century Plaza
2987 Clairmont Road, Suite 350
Atlanta, GA 30329

Lindsay P. S. Kolba
Office of the U.S. Trustee
Suite 362
75 Ted Turner Drive, S.W.
Atlanta, GA 30303